[No. 5684.]

## LANGLEY V. FITZGERALD.

1. **Appellate Practice—Judgment Based on Conflicting Evidence Not Legally Sufficient—Effect.**

There must be a substantial conflict in the evidence, and it must be legally sufficient to sustain the finding of the court, in order that a judgment may not be disturbed on appeal; and where it does not warrant the finding, the judgment must be reversed.—P. 305.

2. **Mortgages—Foreclosure—Evidence—Sufficiency—Fraud.**

Evidence in an action to foreclose a real estate mortgage reviewed, and held insufficient to support a finding of fraud in procuring the mortgage and note secured.—P. 306.

3. **Same.**

Notes and mortgages duly executed and acknowledged ought not to be set aside for fraud, except on the most clear and convincing proof of their fraudulent character.—P. 306.

*Appeal from the District Court of the City and County of Denver.*
*Hon. John I. Mullins, Judge.*

Mortgage foreclosure by L. A. Langley against Nora Fitzgerald. From a judgment for defendant, plaintiff appeals.      *Reversed.*

Messrs. ELLIOTT & BARDWELL, for appellant:

Mr. JOHN H. REDDIN, for appellee.

Mr. JUSTICE BAILEY delivered the opinion of the court:

This was an action to foreclose a mortgage on real estate, given to secure the payment of a promissory note for $175.30. Defendant denied that she made the note, but alleged that she did make one for $120.00 under the following circumstances: That she was a servant in the employ of a Mrs. Bush, who kept a rooming house in the city of Denver; that her employer had failed to pay her wages for some time, and that she pretended to be indebted to one Dunning, who claimed to be the landlord of the premises; · that Dunning and Mrs. Bush entered into a conspiracy for the purpose of defrauding defendant and procuring from her a note and mortgage, and that they falsely represented to the defendant that Mrs. Bush was indebted to Dunning in the sum of $120.00 for rent, and that unless the same was paid Mrs. Bush would be ejected and defendant would lose her wages; that if the defendant would sign a note, Dunning would protect and hold her harmless and that the indebtedness would be paid within sixty days by Mrs. Bush; that, relying upon these representations and having confidence in Dunning and Mrs. Bush, defendant agreed to sign the note for $120.00 payable in two months, but that she subsequently learned that the note she had signed was for $175.30; and that she was old and feeble, had defective eyesight, and was unable to read and did not read the note or mortgage.

These allegations were denied by plaintiff. Judgment was rendered for defendant and plaintiff appeals. The only assignment of error presented is that the judgment is not supported by the testimony.

Plaintiff testified that Mrs. Fitzgerald came to his office and wanted to make a loan, stating that she wished to help a friend. He said that he did not

care what she wanted to do with the money; if she wished to borrow it and had sufficient security he would loan it to her. She stated that she had the two lots mentioned in the mortgage, and he told her to try and get the money somewhere else, because he did not care to make a loan upon real estate. He also stated that it would be necessary for her to have an abstract of title to the property. She returned the next day and renewed her request for the loan, said she had ordered the abstract but that she wanted the loan immediately because it was necessary in order to help her friend. He made some inquiry, was satisfied as to the condition of her title, and made the loan of $175.30, the sum she desired. A note and mortgage were made for such amount. Defendant then said that her friend was Mrs. Bush; that Mrs. Bush's furniture was mortgaged and the mortgage was about to be foreclosed because of the failure to pay the interest, amounting to $24.30 and an insurance bill for $10.00. Plaintiff and Dunning held a mortgage upon the furniture and Dunning owned the house in which Mrs. Bush lived. Dunning and plaintiff went over to the house and Mrs. Fitzgerald signed the note and executed and acknowledged the mortgage. Plaintiff gave his check for $175.30, and defendant indorsed it to Mrs. Bush. Mrs. Bush indorsed it and Dunning took it to the bank, procured the money, paid the plaintiff his portion of the interest upon the chattel mortgage, and paid himself the rent due from Mrs. Bush out of the balance. H. Dunning, who was the father of the Dunning associated with the plaintiff, testified that the defendant informed him that she was going to borrow some money upon a mortgage of her property for Mrs. Bush.

Ernest W. Dunning testified that he told the defendant the amount of the note and mortgage and

what the mortgage was secured by, explained to her about the papers and that she signed them and he took her acknowledgment; that he was there when defendant indorsed the check, and that the loan was made in the ordinary way of transacting business; that the check was given by plaintiff to defendant, who turned it over to Mrs. Bush and she delivered it to the witness; that Mr. and Mrs. Bush were present at the time; that after about sixty days Mrs. Bush sold the place to Mrs. Martin.

The note was made payable in one year. Defendant inquired of Dunning if she could pay it at any time, and she insisted that the note be made that way, so he wrote in the words "on or before"; that the matter of $120.00 was not spoken of.

Defendant testified that she was 64 years old; that she supported herself by doing housework; that she was working for Mrs. Bush and that Mrs. Bush did not pay her; that she had never been in plaintiff's offices until after the note was signed; that she had nothing to do with plaintiff; that she transacted all of the business with Dunning; that she had cataracts on her eyes and could not see very well; that she refused to pay the interest when notified that it was due; that she did not remember seeing the note and mortgage; that Mrs. Bush wanted her to borrow $120.00 and let her take it, and that Dunning came to the house and Mrs. Bush asked defendant to sign the papers; that she said "all right," and signed them and asked Mr. Dunning if he would protect her for a month or two, and he said that he would as far as he could; that she did not read the paper and did not know what it was. She never thought it was a mortgage and thought the note was for $120.00 and that the length of time it would run was two months; that Dunning did not tell her he was a notary public and did not ask her to acknowledge her signature to the

mortgage; that she could read printing but could not read writing; that the transaction occurred in the evening; that there were three gas jets burning in the room. The note and mortgage introduced in evidence were shown her and she thought they were the ones she signed; she thought he read them to her, but she could not say that she never signed any mortgage; that if she signed two papers she did not know one of them was a mortgage; that she ordered the abstract and that Mrs. Bush said she would pay for it; that she later went to get it and Mrs. Bush did not pay for it, but that she wanted the abstract for her own use.

The sister of the defendant testified that defendant was a widow and had to earn her own living; that a couple of years before the trial defendant was in-injured on a tramway car, which laid her up for six weeks, and there were times when she said that her head "swims around."

Upon this testimony the court rendered judgment for the defendant. Appellee, in order to sustain this judgment, insists upon the application of the doctrine that a judgment based upon conflicting testimony should not be disturbed. This is true, but there must be a substantial conflict in the testimony. The evidence must be legally sufficient to uphold the finding of the court. If it does not clearly warrant the judgment, the judgment must be reversed.—*The LaCrosse Gold Min. Co. v. Scudder*, 4 Colo. 44; *London C. M. M. Co. v. Findlay*, 6 Colo. 571; *Int. Trust Co. v. United Coal Co.*, 27 Colo. 246.

In this case the allegations made in the answer were of a conspiracy between Dunning and Mrs. Bush; that the representations were falsely made; that Mrs. Bush was indebted to Dunning, and that these representations were made for the purpose of procuring the defendant to borrow this money.

There is not a word of testimony in support of this allegation, and the only evidence of a fraud is that the defendant states that she thought she was borrowing $120.00 instead of $175.00, and she thought the time the note was to run was for two months instead of one year. She says that she did not go to the plaintiff and did not have the conversation with him which he testified to, but, in corroboration of the testimony of plaintiff is the fact that the defendant at that time ordered the abstract of title to her property made and that Mrs. Bush had agreed to pay for it. That admission upon her part is, however, coupled with the assertion that she desired the abstract for her own use. She had evidently had the property for some time, and had no abstract, but, by some coincidence, she ordered the abstract at the very time the plaintiff testifies she had agreed to make the mortgage and furnish the abstract.

Promissory notes and mortgages, which are duly executed and acknowledged before a notary public, ought not to be set aside as invalid for fraud, except upon the most clear and convincing proof of their fraudulent character, and we cannot find anything in this testimony which warrants the finding and judgment of the trial court. The judgment will, therefore, be reversed.          *Reversed.*

Chief Justice Steele and Mr. Justice Goddard concur.