[No. 6356.]

Colorado Investment Loan · Co. v. Beuchat.

1. **Equity—Cancellation of Writings—Evidence.** — Unequivocal testimony that the writing was procured by false representations as to its effect, may, though contradicted, suffice to warrant its cancellation by a court of equity.—(499, 500)

2. **Negligence, When a Bar to Relief**—Confidence reposed by the maker of a document in the one at whose instance it is executed may excuse the neglect to read it or submit it to counsel. Negligence of the defrauded party will not avail the one guilty of the fraud inducing such negligence.—(501)

*Appeal from Fremont District Court* — Hon. Morton S. Bailey, Judge.

Mr. E. L. Williams and Mr. W. O. Peterson for appellant.

Mr. W. W. Anderson for appellee.

Mr. Justice Gabbert delivered the opinion of the court:

Appellee, as plaintiff, brought suit against appellant, as defendant, to quiet title to certain lots. The defendant claimed a lien upon the premises in question growing out of what it terms a building and loan contract, consisting of (1) a certificate for twenty-five shares of the capital stock of the defendant issued to plaintiff, upon which he agreed to pay the sum of $12.50 per month, payable monthly in advance until such stock should mature, which was assigned to defendant as collateral security for a loan made by the latter to the former; (2) a note of plaintiff for $2,500.00, payable on or before ten years after date, at six per cent. per annum, together with a monthly premium thereon of $15.00, the stock subscription, interest and premium amounting to $40.00 per month, which plaintiff, by the note in question, agreed to pay monthly until such stock matured. The considera-

tion recited in the note is as follows: "This note is given in consideration of a loan of One Thousand Dollars by the payee to the maker hereof, and in further consideration of the agreement of the payee to assume and pay for the maker a certain promissory note of $1,500.00." (3) A real estate mortgage by plaintiff to the defendant on these lots, securing the $2,500.00; and (4) a by-law of the defendant imposing penalties for delinquent payments.

The defendant claimed that plaintiff had failed to comply with the terms of the note and mortgage in question; that for this reason certain sums were due it; that as provided in the mortgage, it had elected to declare the whole sum thereby secured, due; that the cash surrender value of the stock was $337.22; that after allowing this credit, there was due and unpaid on the $2,500.00 note, including the interest thereon, premiums, monthly installments on the stock certificate, and other items, aggregating the sum of $2,426.43, for which defendant prayed judgment, and a decree foreclosing the mortgage on the lots in controversy. In brief, it may be said, the defendant contended that, according the the conditions upon which the stock was issued, the terms of the note given, and the mortgage securing it, the plaintiff was to pay the sum of $40.00 per month until his stock reached its face value, namely, $2,500.00, when, by the surrender of the certificate representing it, the $2,500.00 note was to be cancelled and the mortgage securing it released; but as the stock had not matured, and was only worth the surrender value indicated, plaintiff was indebted to the defendant in the sum demanded.

As a defense to this claim, the plaintiff contended that he and a Mr. Harding had been for a long time intimate and confidential friends; that Harding was the agent of the defendant, in charge of the lots in

question; that Harding, acting for the defendant, informed him that he could sell him the lots for the sum of $3,000.00, of which amount $500.00 was· to be paid in cash, and the remainder in payments of $40.00 per month, without interest, secured by a deed of trust on the lots; that he accepted the proposition, paid Harding, as the· agent of the defendant, five hundred dollars in cash; that defendant was to execute and deliver to him a deed for the lots, and that he was to execute a deed of trust securing the deferred payments conditioned as per their oral arrangement, and that he has, from month to month, paid the defendant the sum of $40.00, which payments aggregated the sum of $2,480.00, and has tendered to defendant the balance of the $2,500.00.

As a defense to the note and mortgage embraced in the so-called building contract upon which the defendant relied, the plaintiff averred facts (the sufficiency of which is not challenged), from which it appears that these instruments were secured in such circumstances as to render them void, and for this reason the plaintiff prayed that they be so declared. The pleadings and testimony disclose that at the time plaintiff signed the building and loan contract, he also signed a note for fifteen hundred dollars, payable to the defendant, and a deed of trust on the lots in question securing it, and that this note and the security were subsequently assigned to another party. This is the fifteen-hundred-dollar note above referred to.

By supplemental defense the plaintiff set up that defendant had failed to pay this note, and that the deed of trust securing it had been foreclosed, which would necessitate the payment by plaintiff of the amount for which the premises in dispute were sold in order to redeem.

The evidence establishes, without question, that

plaintiff paid the $500.00 cash, and monthly payments aggregating $2,480.00, and tendered the remainder of the $2,500.00. It further establishes that defendant assumed and agreed to pay the $1,500.00 note, that it failed to comply with this agreement, and that the deed of trust securing it has been foreclosed.

The testimony of plaintiff is to the effect that he bargained with Harding, as the agent of defendant, for the purchase of the premises for the sum of three thousand dollars, five hundred dollars of which was to be paid in cash, and the remainder in installments of forty dollars per month without interest, the deferred payments to be secured by deed of trust or mortgage on the lots. His testimony on this subject is corroborated by other witnesses.

On the subject of the execution of the instruments under which the defendant claimed a lien on the premises in dispute, he testifies, in substance, that when he paid the five hundred dollars, the defendant was to prepare the necessary papers to evidence their contract, consisting of a deed to him from it, and a trust deed securing the balance of the purchase price, to be paid in installments of $40.00 per month; that he was subsequently notified by Harding that the deed of trust was ready for his signature; that he called at the office of Mr. Harding, and there found a Mr. Bennett, who at that time was secretary of the defendant; that when the papers he was to execute were presented for his consideration, they were more voluminous and numerous than he expected, and he suggested to Harding that he had better get a lawyer to look them over for him; that Harding replied: "Charlie, why do you want to fool away your money on a lawyer? You have known me for a number of years, and know that I wouldn't misrepresent anything to you. These papers are exactly in accordance with our agreement, and you had just

(32)

as well sign them." He then states, substantially,
that having full faith and confidence in Harding, and
believing he would not misrepresent anything to him,
he (plaintiff), without further question or examina-
tion, signed the papers, went with Mr. Bennett to a
notary public, and acknowledged them; that he never
had occasion to suspect that the papers signed con-
tained anything different from the verbal contract
made by him when he purchased the property until
something over a year later, when, in discussing with
friends the terms of his purchase, it was suggested
that he might have been the victim of a conspiracy,
and induced to sign papers different in contents from
those he supposed he had signed; that, being uneasy
about it, he made a special trip to see Harding; told
him what had been suggested, and asked him if he
had a copy of the papers; that Harding replied to
him: "Charlie, what d—— fool has been putting
that notion in your head? The papers are exactly in
accordance with our agreement. You bought that
property for $3,000.00, paid $500.00 in cash, and are
to pay $2,500.00 in monthly installments of $40.00
each, and when you pay that $2,500.00 in that manner,
you will get a clear release to that property." He
then states, that still having confidence in Harding
and fully believing that what he said was true, he
continued to pay the forty dollars per month until
he paid $2,480.00; that when he had paid this sum
he informed Harding that he had paid all but twenty
dollars due on the lots; that he was going to Denver
to pay that amount, and get his property released;
that Harding then told him the papers he had signed
were a building and loan contract, and that he would
only be entitled to such credit on his $2,500.00 note
as the defendant's books might show his stock to be
worth; that he soon after came to Denver and was
informed by the defendant at its office that instead

of being credited with $2,480.00, he was only entitled to a credit of $337.22.

The court found the issues between the parties in favor of the plaintiff, and determined that the note, contract and mortgage held by the defendant were unconscionable and inequitable, and that they were procured from the plaintiff by the defendant through misrepresentation and by untrue and false interpretations thereof. On these findings judgment was rendered to the effect that the note and mortgage, constituting what has been designated as a building and loan contract, were void, and for a sum in favor of plaintiff, the details of which it is not necessary to mention, as the judgment is correct if either of the grounds upon which it is based can be sustained by the record before us. From this judgment the defendant has brought the case to this court for review on appeal.

On behalf of the defendant it is contended that even if the building and loan contract cancelled by the decree of the court was procured by misrepresentation, and by untrue and false interpretations thereof, the circumstances were such that a court of equity was not justified in cancelling them upon the ground that they had been procured by fraud. In support of this claim it is contended that the plaintiff was guilty of such negligence in failing to read the instruments he executed that a court of equity will not relieve him from the consequences of his folly in these respects. Notes and mortgages duly executed and acknowledged should not be set aside for alleged misrepresentations with respect to their contents except where the testimony on the subject is clear and convincing.—*Langley v. Fitzgerald*, 43 Colo. 301. This rule of law, however, which should be observed and followed in cases of this character, does not necessarily mean that where there is a con-

flict in the testimony on the subject of misrepresentation, the proof is not clear and convincing, but, rather, as applied to this case, it contemplates that the testimony on behalf of the party seeking relief on account of alleged misrepresentations must be unequivocal. The testimony of plaintiff, although controverted on some points by witnesses for the defendant, was accepted as true by the trial court, and is sufficient to sustain the finding to the effect that the building and loan contract was procured by misrepresentation and untrue interpretations; and the only question necessary to consider is, whether or not the plaintiff was guilty of such negligence in failing to acquaint himself with the contents of the instruments he signed, by reading them, as to preclude him from obtaining relief on account of the statements made to him by the agent of the defendant regarding their character and purport. A universal rule which will serve as a test in determining this question cannot be formulated. The oral contract which the plaintiff made with Harding as a representative of the defendant, for the purchase of the lots, was a simple one, and easy to be understood. It appears that plaintiff and Harding had been acquainted for many years, and that plaintiff had confidence in his integrity; that when the papers which plaintiff was informed evidenced the oral arrangement they had made for the purchase of the lots were presented for his signature, he suggested to Harding that he ought to have a lawyer to look them over; that Harding informed him that it was unnecessary to spend money in that way; that they had been acquainted for many years, and plaintiff knew he would not misrepresent anything to him; that the papers were in accordance with their agreement, and that, relying on these representations, he signed them without further question or examination.

In brief, the reason plaintiff did not read the instruments he executed, or have a third party examine them for him, was because Harding represented that they simply embodied the contract which they had entered into for the purchase of the lots, which statements he believed, and acted upon, because of his confidence in Harding. In such circumstances the law is, that where one of two contracting parties is fraudulently induced to execute a written instrument upon the false representations that it expresses the agreement which they had theretofore made orally, the party defrauded may defend against the enforcement of the fraudulent instruments by the other party, even though he may be chargeable with want of prudence in relying upon the false representations. While in ordinary business transactions men are expected to exercise reasonable business prudence and not rely upon others with whom they deal to protect and care for their interest, this requirement is not to be carried so far as to ignore or protect positive intentional fraud, successfully practiced by one upon the other. As between the original parties, one who has intentionally deceived the other to his prejudice, is not to be heard to say, in defense of the charge of fraud, that the party defrauded ought not to have trusted him. A person cannot procure a contract in his favor by misrepresentations regarding its terms and conditions to the one signing it which induces the latter not to read it, and then bar a defense to it on the ground that had the defrauded party not been so negligent, the party committing the fraud could not have succeeded in deceiving him, when the negligence of the party deceived is caused by misrepresentations and false statements of the other. In brief, the negligence of a party to a contract induced by fraud of the other cannot be taken advantage of by the latter.—*Warder, Bushnell & G. Co. v. Whitish,*

46 N. W. (Wis.) 540; *Maxfield v. Schwartz*, 47 N. W. (Minn.) 448; *Alexander v. Brogley*, 41 Atl. (N. J.) 691; *Wood v. Cin. Safe & Lock Co.*, 22 S. E. (Ga.) 909; *Burlington Lumber Co. v. Evans Lumber Co.*, 69 N. W. (Iowa), 558.

Applying these propositions to the case at bar, we are of the opinion the trial judge was right in holding that the instruments relied upon by defendant to establish a lien upon the property in controversy were obtained through misrepresentation, and by untrue and false interpretations thereof, and were, therefore, void. This conclusion renders it unnecessary to consider the other ground upon which the trial court based its decision.

The judgment of the District Court is affirmed.

*Affirmed.*

Mr. JUSTICE MUSSER and Mr. JUSTICE HILL concur.